



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

May 8, 1939

Honorable T. M. Trimble
First Assistant State Superintendent
Austin, Texas

Dear Sir:              Opinion No. O-710
                       Re: Questions relating to the
                       bonded indebtedness of the
                       Sudan Independent School
                       District as it affects that
                       portion of said district sub-
                       sequently taken into the
                       Springlake Independent School
                       District, all in Lamb County.

We are in receipt of your letter of April 25, 1939,
wherein you enclose letter of April 12, 1939, addressed to you
by F. O. Boles, County School Superintendent of Lamb County,
Texas, wherein he asked certain questions as indicated above.
We shall not set out the questions in full asked by Mr. Boles in
his letter, but we shall paraphrase them and endeavor to answer
all the questions which are troubling Mr. Boles in this opinion.

The facts relating to the creation of the new school
district here involved will first be stated.

The Sudan Independent School District was created by
Acts 1921, House Bill No. 166, Chapter 35, page 121, Thirty-
Seventh Legislature, First Called Session. In 1923, House Bill
No. 235, Chapter 19, page 76, Thirty-Eighth Legislature, Regular
Session, effective March 4, 1923, amended the prior Act so as to
define more clearly the boundaries of the Sudan Independent School
District and to validate a $40,000.00 bond issue of said district
authorized at an election held December 31, 1921.

The Springlake Independent School District was created
in 1923 by House Bill No. 234, Chapter 43, page 153, Thirty-Eighth
Legislature, Regular Session, effective March 24, 1923. This Act
provides in part:

"Sec. 5. A part of the territory described
in Section 1 of this Act is taken from the Su-
dan Independent School District of Lamb County,



Honorable T. M. Trimble, May 8, 1939, Page 2

Texas, and said territory so taken away from
said Sudan Independent School District shall
remain and be chargeable with its prorata
part of the indebtedness represented by any
bonds heretofore voted by the Sudan Independ-
ent School District in proportion as the tax-
able values of that part of the territory so
taken away from the Sudan Independent School
District bears to the total taxable values
of the Sudan Independent School District ac-
cording to the last official approved assess-
ment role; provided, however, that the Board
of Trustees of the Springlake Independent
School District, without the necessity of a
petition therefor may order an election in
said district to determine whether or not
the said district as herein created as a
whole shall assume such prorata part of out-
standing bonds."

Question No. 1. Does the Act creating the Springlake In-
dependent School District effectively detach that portion of its
territory formerly contained in the Sudan Independent School Dis-
trict from the latter district?

We answer this question in the affirmative. The Act
creating the Springlake district, which is later in time of enact-
ment and effective date than either of the Acts affecting the Su-
dan district, expressly does so. As said by Mr. Justice Critz in
Lyford Independent School District vs. Willamar Independent School
District (Tex. Com. App.) 34 S.W. (2d) 854:

"It is settled that a school district has
no contract or vested right in laws fixing the
boundaries, and cannot assert that a statute re-
ducing its area violates any contract right. El
Dorado Independent School District vs. Tisdale
(Tex. Com. App.) 3 S.W. (2d) 420."

Question No. 2. What obligation, if any, relating to
the $40,000.00 bond issue of the Sudan district attaches to the
Springlake district, or that part thereof detached from the Sudan
district and made a part of the Springlake district?

Section 5 of the Act creating the Springlake district,
quoted above, provides that:

"Said territory so taken away from said Su-
dan Independent School District shall remain and
be chargeable with its prorata part of any bonds

heretofore voted by the Sudan Independent School
District . . ."

Mr. Boles states in his letter:

"There was no agreement as to assumption of
bonded indebtedness so far as the written records
show and this copy of the County Board minutes
contains the only County record of the transac-
tion. No assumption election was ever ordered or
held. The involved territory has been considered
a part of the Springlake territory since that date
and the matter has not been brought to the atten-
tion of the County Board again until this year."

It appears, therefore, that no action has been taken for
the assumption of any part of the $40,000.00 indebtedness by the
Springlake district in conformity with the above quoted section
of the Act creating the Springlake district. Nor has the County
Board of Trustees of Lamb County taken any action in this connec-
tion as authorized by Acts 1927, Fortieth Legislature, First Called
Session, page 228, Chapter 84, which Act is also designated as Art-
icle 2742b, Revised Civil Statutes of Texas. We quote from Section
of that Act:

"When the boundaries of any school district
having an outstanding bonded indebtedness have
been changed or its territory divided, or two
or more of such districts consolidated, it shall
be the duty of the County Board of Trustees to
make such an adjustment of such indebtedness and
district properties between the districts ef-
fected and between the territory divided, detached
or added, as may be just and equitable, taking in-
to consideration the value of school properties
and the taxable wealth of the districts effected
and the territory so divided, detached or added
as the case may be. And when said Board has ar-
rived at a satisfactory basis of such an adjust-
ment, it shall have the power to make such orders
in relation thereto as shall be conclusive and
binding upon the districts and the territory there-
by effected."

We also call your attention to that portion of Section 5
of the above quoted Act which created the Springlake district which
provides that the Springlake district as a whole may assume this
prorata share of the debt declared to be against that portion of
the district which was formerly a part of the Sudan district upon
an election so deciding held in the Springlake district. This elec-
tion is expressly authorized to be called by the Trustees of the

Honorable T. M. Trimble, May 8, 1939, Page 4

Springlake district without the necessity of a petition.

Almost the identical situation as here presented arose in the case of Lyford Independent School District vs. Willamar Independent School District (Comm. App. of Tex.) 34 S.W. (2d) 854. In that case the Lyford Independent School District was first created by special act of the Legislature. Thereafter the Willamar Independent School District was created by special act, and the newly created Willamar district was given a part of the territory formerly belonging to the Lyford district. Section 4 of the Act creating the Willamar district provided:

> "That the Willamar Independent School District as created by this Act shall pay its share of any indebtedness now due to the Lyford Independent School District to be prorated according to the assessed value of that part of this district which is a part of said Lyford district."

The Commission of Appeals expressed some doubt as to the constitutionality of the Act creating the Willamar district, but said that all such doubt had been removed by a subsequent validating act of the Legislature, being Senate Bill No. 384, Chapter 298, page 666, General Laws, Regular Session, Forty-First Legislature. Said validating act being incorporated in Vernon's Annotated Statutes as Article 2802a. This validating act would apply with equal force to the acts creating the Sudan and the Springlake districts.

The Commission of Appeals resolved all questions relating to the adjustment of bonded indebtedness between the two school districts by referring to Article 2742b, Revised Civil Statutes, Section 9 of which we quoted above. The court used the following language:

> "Under Section 9 it is provided that where the boundaries of any school district having an outstanding bonded indebtedness has been changed, or its territory divided, etc., it is the duty of the County Board of Trustees to make a just and equitable adjustment of the properties and indebtednesses involved. Section 10 of the Act provides means and methods of carrying into effect the orders of the County School Board made under Section 9. Section 11 provides for taking care of indebtednesses in cases where necessary refunding bonds are voted down, or the County Board is otherwise unable to arrange an adjustment of such matters. Section 12 is general in its provisions and gives the Board power to arrange such matters in any legal and equit-

Honorable T. M. Trimble, May 8, 1939, Page 5

able manner."

We therefore refer you to Sections 10, 11 and 12 of Article 2742b, Revised Civil Statutes, which we quote as follows:

"Sec. 10. To carry into effect orders adjusting bonded indebtedness when changes are made in school districts, the County Board of Trustees shall have the power to order the Trustees of the districts effected, to order an election for the issuing of such refunding bonds as may be necessary to carry out the purpose of such order; and, in such case, it shall be the duty of the district trustee to order such election, cause the same to be held, and, if the proposition is carried, to issue the bonds voted. Such bonds shall be of the same denomination and carry the same interest rate and mature at the same time as the outstanding bonds owing by the district issuing them; and when so issued, shall if possible be exchanged for the outstanding bonds for which the district issuing them shall still be liable, according to the order adjusting such indebtedness; and in cases where such an exchange cannot be made the new bonds of the district, to the amount of the old bonds for which it is still liable and to which no exchange can be made, shall be deposited in the County Treasury to the account of such district. Thereafter taxes shall be levied and assessed only for the payment of interest, sinking fund and principal of the new bonds so issued; and the funds arising from such taxation shall be used to discharge the principal and interest of such new bonds as have been issued and exchanged and such old bonds as have not been exchanged. When taxes are collected applicable to new bonds not exchanged and the proceeds applied to payment on old bonds not exchanged, the corresponding new bonds in the County Treasury shall be credited with such payment and retired as the old unexchanged bonds are retired.

"Sec. 11. In cases where changes are made and districts having outstanding bonded indebtedness and where the necessary refunding bonds are voted down or where the County Board of Trustees are otherwise unable to arrange an adjustment or

settlement of such bonded indebtedness, it shall
be the duty of the trustees to certify the fact
and the territories affected by such changes, to
the Commissioners' Court and thereupon it shall
become the duty of the Commissioners' Court to
thereafter annually levy and cause to be assess-
ed and collected from the taxpayers of such dis-
tricts as they existed before the changes were
made, the tax necessary to pay the interest, the
sinking fund and discharge the principal of such
indebtedness as it matures. And it shall be the
duty of each Independent School District so ef-
fected, to cause all funds in its hands, whether
sinking funds or otherwise, which have been col-
lected on account of such bonded indebtedness,
to be transferred to the County Treasurer of the
County in which such district is situated and such
district shall thereafter cease to levy and col-
lect any tax on account of such bonds; and it
shall be the duty of the County Treasurer to keep
the funds so transferred and those arising from
taxation, in separate accounts and apply the same
only to the discharge of such bonded indebtedness
and the interest thereon, as the same matures.

"Sec. 12. Nothing in the provision of this
Act shall prevent the County Board of Trustees
from arranging any other method for the adjust-
ment and settlement of outstanding bonded indebt-
edness of school districts in which changes are made
but they shall have full power and authority to
make any legal and equitable adjustment and set-
tlement in such cases that can be effected."

Applying the above quoted sections of Article 2742b, R.C.
S. to the questions asked by Mr. Boles, we respectfully advise that
the County Board of School Trustees shall make an adjustment of the
indebtedness between the Sudan and the Springlake districts, and it
may direct the trustees of the Springlake district to call an elec-
tion within the said district for the assumption of its prorate
share of the $40,000.00 bonded indebtedness of the Sudan district.
Should such an assumption of indebtedness be voted down by the
Springlake district, the County Board of School Trustees shall cer-
tify the fact to the Commissioners' Court of Lamb County as direct-
ed by Section 11, above quoted. The Commissioners' Court of Lamb
County shall thereupon "cause to be assessed and collected from the
taxpayers of such districts as they existed before the changes were
made, the tax necessary to pay the interest, the sinking fund and
discharge the principal of such indebtedness as it matures." Section
11, supra.



Honorable T. M. Trimble, May 8, 1939, Page 7

Question No.5. If territory is detached from one school district and added to another, does that territory have an interest in the school properties of the first district (which have been paid, for by taxes or bond issues) and is the first district obligated to reimburse the district to which the territory is attached for the prorata interest of the detached territory in the properties of the first school district?

This question is one which the County Board of School Trustees, or the County Commissioners' Court may take into consideration in adjusting the indebtedness between the two districts. However, "there is no authority established by law for determining the value of the consideration to be received by an extended district for assuming such indebtedness" - Brown vs. Truscott Independent School District, 20 S. W. (2d) 214, affirmed by Commission of Appeals, 34 S. W. (2d) 837.

Justice Critz in Lyford Independent School District vs. Willamar Independent School District, 34 S. W. (2d) 854, said:

> "We presume from the record that all properties originally owned by the Lyford district were left situated in such district as changed by the Act creating the Willamar district, and there is no dispute between the two districts as to the ownership of these properties."

We accordingly advise you that the Springlake district has no legally enforceable interest in any of the physical properties of the Sudan district.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
Walter R. Koch
Assistant

WRK:FG

APPROVED:
ATTORNEY GENERAL OF TEXAS

